CHARLES A. GRATTAN, Plaintiff in Error, *v.* ELIZABETH GRATTAN
*et al.*, Defendants in Error.

### ERROR TO WILLIAMSON.

Where an intestate has, in his life time, provided for a child by an advancement, such heir will only be entitled to participate with his co-heirs in the distribution of the estate, by bringing his advancement into "*hotchpot*" with the whole estate, and taking his equal portion thereof.

Such advancement need not be returned in kind, but is to be estimated according to its value at the time it was made, and considered as a debt, due the estate, from the heir so advanced, and may be deducted from his share of the distributive estate, if such share be sufficient.

The widow takes her share of the personal estate, and dower in the lands, without regard to advancement, and only the balance, after deducting the widow's share, is treated as estate for distribution.

The heir advanced has his election, to retain what he has received, or to relinquish it and claim his equal share with the others in the distribution of the estate.

When a party is entitled, at his election, to one of several things, he must exercise such right in a reasonable time; if he does not, or cannot, for want of legal capacity (as for infancy), equity in favor of other parties in interest will do it for him; or bar a future exercise of his right.

Courts of equity have a paramount jurisdiction in cases of administration and settlement of estates, and may control courts of law in their action in such cases. They have, also, plenary jurisdiction over the persons and estates of infants, and will, in its exercise, cause to be done whatever may be necessary to preserve their estates and protect their interests.

SILAS GRATTAN died in 1852, and left a widow, Elizabeth Grattan, and three heirs at law, viz. : the plaintiff, Charles, and Philip D. B. Grattan and Azariah B. Grattan, who are minors, and of whom the said Elizabeth is guardian.

Said Silas Grattan died seized of real estate, worth, exclusive of widow's dower, $400, and upon his decease said Binckley was appointed his administrator.

That the sum of $1,900, in cash and notes, and other evidences of debt, came to said Binckley's hands, as administrator, beside $834.15, amount of sales of personal property ; the probable indebtedness of said estate being about $300.

That the said Grattan, deceased, prior to his death, by way of advancement, purchased with his own money, in the name of his infant son, Azariah B. Grattan, real estate worth $1,480, or thereabouts ; and also purchased, in the name of his infant son, Philip D. B. Grattan, with his own funds, real estate worth $1,480, or thereabouts, beside other real estate which the said Silas purchased of James M. Campbell, worth $100, and which was conveyed by said Campbell to said Philip, at the request of the said Silas. All of the said lands were purchased by the said Silas in the year 1852.

At the time of the purchasing the said lands by the said Silas, in the name of his minor children, he assured the plaintiff, Charles Grattan, that he should have as much of his

property as any of his other children, and merely invested his money in that way for his minor children, fearing that his property would be squandered by guardians and adminis-trators before they would attain their majority; and was the more anxious so to provide for his minor children, as he sup-posed his death to be near at hand, and did not thus provide for the plaintiff, Charles, because he was of age, and could take care of his share of the estate.

At the Williamson County Court, Elizabeth Grattan was appointed guardian of the minors, and is now acting in that capacity.

The plaintiff in error, Charles Grattan, filed his bill on the chancery side of the Williamson Circuit Court, at the March term, 1854, of said court, stating the above facts, and, also, alleging that there is now in the hands of the administrator the sum of $2,101.48, and that no order of distribution has yet been made by the county court.

Elizabeth Grattan, widow, and guardian of the minor heirs, Azariah B. and Philip D. B. Grattan, and George W. Binckley, administrator, are made defendants, and the plaintiff, in his bill, insists upon defendants' having received the said estate as an advancement, and that, *pro tanto*, they have in equity and good conscience no claim upon the residue of the estate of the said Silas, and prays that, after deducting the widow's portion of the personal estate, and payment of debts, the administrator be ordered to pay him an amount equal to the advancement to the minors, and that the residue be equally distributed between the plaintiff and his co-heirs.

A summons was issued, returned and served, as required by law, and a guardian *ad litem* was appointed, who filed his answer on behalf of minor heirs, at the April term, 1854, of the Williamson Circuit Court, at which term of court a default was taken against adults, and cause referred to master to take proof.

The report of the master, filed at the September term of said court, A. D. 1854, substantially sustains the allegations in the bill. The court, upon a final hearing, dismissed the bill without prejudice; to reverse which decree, the plaintiff brings the case into this court, and for error assigns:

1st. Refusing to grant relief prayed for.
2d. Dismissing bill.

W. J. ALLEN, for Plaintiff in Error.

SKINNER, J. This was a bill in equity for distribution of an intestate's estate. The bill alleges that, in 1852, Silas Grattan died intestate, leaving the complainant, Azariah B. and Philip

D. B. Grattan, his children, and sole heirs at law, and Elizabeth Grattan, his widow, him surviving, and seized of certain real estate in this state, which descended to said heirs, and possessed of certain personal estate, which remains for distribution among them; that said Silas, in his lifetime, conveyed, and caused to be conveyed, to said Azariah and to said Philip, respectively, by way of advancements, and with the intention of providing for the complainant out of the remainder of his estate, certain real estate; that said Azariah and said Philip, at the time of making said advancements, were, and still are, infants, and that said Silas died without providing for complainant; that one Binckley is administrator of the estate of said Silas, and has in his hands said personal estate for distribution.

The bill makes said Azariah, Philip and Elizabeth, and said Binckley, defendants; and prays that said Azariah and Philip be compelled to bring into *hotchpot* with the estate of said Silas their respective advancements, or be barred from participating as heirs in the said estate. Upon the hearing the court dismissed the complainant's bill.

Without referring to the evidence, which appears sufficient to entitle the complainant to a decree, if the facts alleged entitle him to equitable relief, we proceed to examine the legal and equitable questions involved.

Our statute provides that, "Where any of the children of a person dying intestate, or their issue, shall have received from such intestate, in his lifetime, any real or personal estate, by way of advancement, and shall desire to come into the partition or distribution of such estate with the other parceners or distributees, such advancement, both of real and personal estate, shall be brought into *hotchpot* with the whole estate, real and personal, of such intestate; and every person so returning such advancement, as aforesaid, shall thereupon be entitled to his or her just proportion of said estate." Statutes of Ill. 1856, p. 1201.

This provision is in harmony with the ancient customs of certain localities, and with the common law generally of England, with regard to lands descended in coparcenary, existing at the time of the settlement of the American colonies; and with the subsequent statute of distributions, of 22 and 23 Charles the Second. Bacon's Abr. title *Coparceners,* E; ibid. title *Uses and Trusts,* D; ibid. title *Executors and Administrators,* K; Williams on Exrs. 907; ibid. 916 to 924; 2 Kent's Com. 420, 421 and 422.

The principle of the English statute is, equality of distribution of the ancestor's personal estate among his children and their descendants; and such is the object and purpose of our

statute, including both the real and personal estate of the ancestor.

An advancement is the giving by the intestate, in his lifetime, by anticipation, the whole or a part of what it is supposed the donee will be entitled to on the death of the party making it. And according to the decisions under the English and similar American statutes, the ancestor must have died intestate; the gift must have been made in his lifetime, and completely executed on his part, with the intention that the same should be the child's portion of his estate, or a part of such portion; the gift to the child or heir, made in the lifetime of the intestate ancestor, is *prima facie* an advancement, and is to be treated, in case the party to whom the advancement was made comes in for his distributive share with his co-heirs, as a debt due from him to the estate, and may be deducted out of his share of the entire estate so brought together, if such share be sufficient for that purpose; the widow takes her share of the personal estate, and, of course, her dower in the lands, without regard to advancements, and the balance only, after deducting the widow's share, is treated as estate for distribution : the child advanced or provided for will be entitled to participate with his co-heirs: in the estate for distribution only upon bringing in what he has received by way of advancement, and taking, with them, of the whole estate so united, his equal portion; and the property or money advanced need not be returned in *specie,* or *kind,* but is to be estimated according to its value at the time the advancement was made, and the heir so advanced and coming in will be entitled to his equal share of the whole, deducting the value of the advancement. 2 P. Williams R. 440; Bacon's Abr. title *Executors and Administrators,* K ; ibid. title *Uses and Trusts,* D ; Williams on Exrs. p. 916 to 924 ; 2 Story's Eq. Jurisp. Secs. 1202 to 1206; *Jackson* v. *Matsdorf,* 11 John. R. 91 ; *Bemis* v. *Stearns,* 16 Mass. R. 200 ; *Osgood* v. *Reed,* 17 ibid. 356 ; *Elliot* v. *Collier,* 1 Ves. R. 16 ; 3 Atk. R. 259 ; 8 Ves. R. 55 ; *Stearns* v. *Stearns,* 1 Pick. R. 157.

These rules, adopted by the courts in the construction and enforcement of a statute subsequently substantially incorporated into our law by legislative enactment, and consistent with the evident spirit and policy of the latter statute, are presumed to have been in the mind of the legislature at the time of its adoption, and control its construction. *Campbell* v. *Quinlin,* 3. Scam. R. 289 ; *Riggs* v. *Wilton,* 13 Ill. R. 15.

The heir advanced may, if he choose, retain what he has received, but if he does he must be content, and relinquish all claim of participation with his co-heirs in the distribution or partition of the ancestor's estate.

Necessarily, therefore, it is for him to elect whether he will retain what has been advanced to him, and relinquish all right in the estate descended and for distribution, or will return or account for the advancement, and take of the entire estate commingled, equally with the other heirs.

Infants, for want of legal capacity, cannot exercise this power and right of election, and these infant defendants must be excluded from partaking in the distribution in this case, or the estate must remain in the hands of the administrator until they arrive at full age; unless equity will interpose, and, upon ascertaining what would be most beneficial for them under the facts, exercise for them this power.

A party entitled to one only of several things, at his election, where other rights are involved, must exercise such right of election in a reasonable time, and if he does not, or cannot for want of legal capacity, in favor of other parties in interest, equity will do it for him, or bar him from a future exercise of the right. 2 Story's Eq. Jurisp. Chap. 30.

Courts of equity have a paramount jurisdiction in cases of administration and the settlement of estates, and may control courts of law in their action in the settlement and distribution of estates. 1 Story's Eq. Jurisp. Chap. 9; Williams on Exrs. pp. 1239, 1240.

They have, also, a similar and plenary jurisdiction over the persons and estates of infants, and will, in the exercise of that jurisdiction, cause to be done whatever may be necessary to preserve their estates and protect their interests. 2 Story's Eq. Jurisp. Chap. 35; *Cowls* v. *Cowls*, 3 Gil. R. 435. In this case, if the value of the advancements respectively does not exceed the share of the heir in the whole personal estate for distribution among the heirs, including the advancements, and the court upon a further hearing shall find it beneficial to the infant defendants to take their distributive shares and portions of the entire estate, instead of retaining their respective advancements, it will not be necessary to touch the real estate descended, but the advancement may be deducted from the share of the party to whom it was made; otherwise, in order to do complete equity to all, it may be necessary to make partition of such real estate, after disposing of the personal estate, according to the rights of the parties; and for that purpose it may, perhaps, be necessary for the complainant to amend his bill.

Decree reversed and cause remanded.

*Decree reversed.*