[Civ. No. 6643. First Appellate District, Division Two.—March 15, 1929.]

In the Matter of the Estate of HELEN McCRUM, Deceased. MARIUS HUGH TURCK et al., Appellants, v. JOHN J. McCRUM et al., Respondents.

Philip S. Ehrlich and John O'Donnell for Appellants.

George K. Ford and I. F. Chapman for Respondents.

NOURSE, J.—This is an appeal from a decree of partial distribution. The appellants had filed objections to the petition for partial distribution, asking that it be denied until their claim of heirship had been determined. The objections were overruled and the probate court made findings to the effect that the appellants were not heirs entitled to succeed to any portion of the estate.

The appeal is presented upon typewritten transcripts.

Helen McCrum died testate in the city and county of San Francisco on March 27, 1926. Her husband, Hugh McCrum, died intestate on June 27, 1902; there was no issue of the marriage and at the time of the respective deaths of both Hugh McCrum and Helen McCrum they left no issue, parents, brothers, or sisters. The will of Helen McCrum was holographic and was executed on January 15, 1926. This will, after making numerous charitable bequests and bequests to friends and blood relatives of the testratrix, contained the following clause, which is the subject of the controversy here: "I wish my husband's family to share and share alike the remainder of my property in accordance of promise I made my husband, Hugh McCrum." At the date of the execution of the will and at the date of the death of the testatrix the relatives of Hugh McCrum consisted of six nephews and nieces, who are the respondents herein, and two grandnephews and one grandniece of said Hugh Mc-Crum, who are the children of deceased sisters of Hugh McCrum, and who are the appellants herein.

The question which is presented here is whether the expression in the will "my husband's family" includes the two grandnephews and the grandniece. The trial court decided that the members of the family of Hugh McCrum should be determined in accordance with the provisions of subdivision 5 of section 1386 of the Civil Code, that is to say, that the members of his family were the next of kin in equal degree. It is the contention of appellants that this question is to be determined by reference to subdivision 8 of section 1386 of the Civil Code, so that it would include not only the nephews and nieces in equal degree, but the descendants of any deceased brother or sister by right of representation. The contention of the appellants is based upon the ground that the entire estate of the testatrix, the

residue of which she devised to her husband's family, was the common property of herself and of her predeceased spouse during his lifetime; that her husband predeceased her by twenty-four years, and that at the date of her will she had in contemplation as her husband's family the heirs mentioned in subdivision 8 of the section because she must have known that all the property which she sought to devise to these heirs was such common property.

Section 1334 of the Civil Code provides that "A testamentary disposition to 'heirs,' 'relations,'—or 'family'— without other words of qualification—vests the property in those who would be entitled to succeed *to the property of such person* according to the provisions of the title on succession in this Code." (Emphasis ours.) In the title on succession all that is material here is found in section 1386, which purports to cover the contingencies for the determination of heirship in the case of intestacy. The first subdivisions of this section all relate to the succession to the property of a decedent leaving a surviving husband or wife and issue, leaving no surviving husband or wife but leaving issue, leaving a surviving husband or wife but no issue, leaving neither surviving husband nor wife nor issue but a father or mother, leaving none of these but leaving brothers or sisters or the descendants of deceased brothers or sisters, and leaving none of those mentioned but leaving other kindred. Subdivision 8 alone deals with the right of succession in a case where the deceased is a *widow* or *widower* and leaves no issue. The first paragraph of the subdivision deals with the succession where the property was the common property of the decedent and of his, or her, deceased spouse while such spouse was living. The second paragraph deals with the succession where the property left by the decedent was the separate property of the deceased spouse while living. The portions of this subdivision dealing with the community property, which are material here, provide that when the father and mother of the deceased spouse are both dead one-half of such community property shall go "in equal shares to the brothers and sisters of such deceased spouse and to the descendants of any deceased brother or sister by right of representation." The same method of devolution is provided in the case where the property was the separate property of the deceased

spouse while living. On the other hand, subdivision 5 of this section, which relates to the separate property of the decedent alone, where there is neither issue, husband, wife, father, mother, brother nor sister gives the estate "to the next of kin in equal degree."

■ Section 1327 of the Civil Code provides that "Technical words in a will are to be taken in their techincal sense, unless the context clearly indicates a contrary intention." The word "family," as used in section 1334 of the Civil Code, is equivalent to "heirs." (*Estate of Watts,* 179 Cal. 20, 23 [175 Pac. 415].) ■ "The 'heirs' of a person are those whom the law appoints to succeed to his estate in case he dies without disposing of it by will." (*Hochstein* v. *Berghauser,* 123 Cal. 681, 687 [56 Pac. 547].)

Accepting the rule followed in all the authorities that when the words "heirs," "relations," "family," etc., are used in a will as words of donation we must turn to the title on succession to determine who were included in the term by the testator, we must read the will as though it read "my husband's family (or heirs) as shall be determined to be under the provisions of section 1386, Civil Code, relating to the specific classes of property which are herein devised."

Thus, if we were to determine the family of the deceased husband at the time the will was executed, in relation to the succession to his separate property, we must follow the provisions of subdivision 2 of section 1386, and the family would have consisted of the surviving wife, the children, and grandchildren of the deceased brothers and sisters of the husband because there survived him no issue, father, mother, brother, or sister. If we were to determine the family of the deceased husband at the time of the death of the wife in relation to the separate property of the husband which had come into possession of the wife then we would follow the provisions of the last paragraph of subdivision 8 of that section and hold the family to be the "descendants of any deceased brother or sister." If, on the other hand, the only property to which heirship is claimed was the common property of the decedent and of her deceased spouse while such spouse was living and we were called upon to determine the "family" or "heirs" of the deceased husband in relation to such property we must follow the provisions of the first paragraph of subdivision 8 of that section and hold

the family to be the descendants of the deceased brothers and sisters.

From this it must be apparent that the heirs, relations, or family of a person are to be determined in the light of all the circumstances covering the status of the decedent and the character of the property succeeded to as outlined in the various subdivisions of section 1386. Thus, where the decedent was unmarried, or where he was the first spouse to decease, and the property was the separate property of the decedent, the heirs, family and relations are determined by the first seven subdivisions of the section. But where the deceased was a widow or widower, and the property was the common property of the decedent and his or her deceased spouse while such spouse was living, the heirs are to be determined by the first paragraph of subdivision 8, whereas, if the property was the separate property of the deceased spouse while living, the heirs would be determined by the second paragraph of that subdivision in so far as succession to that property is concerned.

It might be said that subdivision 8 deals with the subject of succession to the property of a widow or widower only, as those who inherit under it "take as heirs of the widow or widower, not as heirs of the predeceased spouse" (*Estate of Watts*, 179 Cal. 20, 23 [175 Pac. 415, 416]), and thus that the section merely defines the heirs of the widow or widower and not of the predeceased spouse. But the section has not been so interpreted. In the *Estate of Page*, 181 Cal. 537 [185 Pac. 383], the decedent, a widow, gave one-fourth of her estate to her husband's "lawful heirs" and the balance to "my lawful heirs." A portion of the property left by the testatrix had been the common property of herself and her deceased spouse and a portion had been the separate property of the deceased spouse. The supreme court said: "The right to succeed to the property of a widow, derived from her deceased spouse, is regulated by section 1386, subdivision 8, of the Civil Code. . . . It will be observed, then, that different heirs of the deceased inherit the different classes of property. Her separate property owned by her during the marriage or acquired by her subsequent to the marriage would be distributed in accordance with section 1386, subdivision 3. The common property of the testatrix and her deceased husband would be divided between the

relatives of herself and the *relatives* of her deceased husband. The separate property of the deceased husband would go to his *relatives* alone.'' (Emphasis ours.) The court then held that the devise of one-fourth of the estate went to the lawful heirs of the widow to be determined by subdivision 8 of section 1386. That is to say, that the heirs of the husband were, under the provisions of that subdivision, also heirs of the widow and entitled as such to participate in the distribution of the three-fourths portion of the estate.

Appellants find further support for their position in the language of the supreme court in the *Estate of Watts, supra,* commenting upon the earlier opinion of *Estate of Marshall,* 176 Cal. 784 [169 Pac. 672]. In the Marshall opinion the will of the testatrix gave the residue of her estate to her *''own* family who I think are all in Mexico.'' The court held that the use of the word ''own'' coupled with the reference to their residence in Mexico indicated an intent to limit the gift to the blood relatives of the testatrix. In the Watts opinion the supreme court said: ''The entire argument proceeded, however, on the assumption that, in the absence of these 'words of qualification' the term 'family' (which, under Civil Code, section 1334, is equivalent to 'heirs') would have covered the persons designated by subdivision 8, section 1386.'' In the *Estate of Ross,* 187 Cal. 454, 463 [202 Pac. 641], the supreme court applied the same doctrine, holding that in ''certain contingencies'' the descendants of a deceased brother or sister were entitled to succeed under subdivision 8, section 1386, that is where the property was the community property of the decedent and his or her deceased spouse. In *Estate of Brady,* 171 Cal. 1 [151 Pac. 275], the supreme court stated that the apparent object of subdivision 8 of this section was to provide for the inheritance equally by the ''respective families'' of the two spouses.

Though in the technical sense urged by respondents the heirs succeeding on the husband's side under subdivision 8 would be heirs of the wife rather than heirs of the predeceased husband, it would seem clear that, when Mrs. McCrum devised this portion of her estate to her husband's ''family'' she used the term ''family'' as including those who on her husband's side would succeed to that portion

of the estate in case of intestacy, because, under the peculiar circumstances present here, the predeceasd husband would have been without family, or heirs, at the time of the execution of the will if this strict interpretation were to be applied. As the effect of this clause of the will was merely to give all that portion of the estate to the heirs on her husband's side to the exclusion of those on her side, and her husband being a ''predeceased spouse,'' as that term is used in subdivision 8 of the section, she must be presumed to have had in mind the law under which the relatives of a predeceased spouse succeed to the estate left by the other spouse as outlined in that subdivision and to have used the term in that sense.

Any other interpretation would be wholly unreasonable. Manifestly the determination cannot be controlled by subdivision 5 of the section because the husband left a wife surviving him. To apply subdivision 2 and thus include in the term ''family'' the surviving wife and her heirs would seem to be directly contrary to the intention of the testatrix, because if she had desired to have the property go in that manner she would have used the expression ''my family'' and thus include all those mentioned in subdivision 8.

█ The grandnephews and the grandniece, being members of the husband's family within this interpretation, they were entitled to participate in the portion of the estate devised to the family by right of representation in the absence of a declaration in the will fixing a different proportion of participation. Here the will provided that the members of the family should participate ''share and share alike.'' Assuming, therefore, that the appellants have satisfactorily proved their relationship (a question which is not before us on this appeal) they would be entitled to participate share and share alike with the respondents as members of the family of Hugh McCrum. For the reasons given the order appealed from should be reversed, with directions to the trial court to hear and determine the question of heirship of appellants in accordance with the views herein expressed, and if it be found that they are, as claimed, the descendants of deceased sisters of Hugh McCrum, deceased, it should then be determined that they are members of the family of Hugh McCrum within the

terms of the will, and entitled to their proportionate share of the property devised.

The order appealed from is reversed.

Koford, P. J., and Sturtevant, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on April 12, 1929, and a petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 13, 1929.

All the Justices present concurred.